UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

SUENG OH CHO and                                    Case No.: 11-75595-ast
KUEM JOO CHO,                                       Chapter 7

                                Debtors.
--------------------------------------------------------X

## DECISION AND ORDER GRANTING IN PART TRUSTEE'S
## MOTION TO COMPEL TURN OVER OF NON-EXEMPT ASSETS

Pending before the Court is the Chapter 7 trustee's motion (the "Motion") to compel the

co-debtor, Sueng Oh Cho ("Sueng"), to turn over surplus funds he received postpetition from the

prepetition, private repossession sale of his 2007 Honda Pilot, which funds Sueng claims as

exempt. For the reasons set forth herein, the Motion is granted in part.

## BACKGROUND

Shortly before the filing of the instant bankruptcy case, Sueng's vehicle, a 2007 Honda

Pilot (the "Pilot"), was repossessed by the secured creditor, American Honda Finance

Corporation a/k/a Honda Financial Services ("Honda Financial"). Honda Financial sold the Pilot

at a private auction held on July 29, 2011 for $15,200.00. This sale resulted in a surplus of

$4,851.47 (the "Surplus") after payment of Honda Financial's secured claim of $10,083.53 and

auction fees of $265.00. The Surplus was then delivered to Sueng in the form of a check; while

it is unclear when the check was actually mailed, the parties agree that Sueng did not receive or

deposit the check until after this bankruptcy case was filed.[1]

On August 8, 2011 (the "Petition Date"), Sueng and Keum Joo Cho ("Keum") (together

with Sueng, the "Debtors") filed a voluntary petition for relief under Chapter 7 of the United

---

[1] The parties have not provided the Court with a copy of the check.

States Bankruptcy Code.[2]  Along with the Petition, Debtors filed Schedule B and Schedule C which identified Debtors' personal property and the property Debtors' claim as exempt. [dkt item 1]  Debtors elected to use the New York exemptions.  Debtors jointly claimed a $326.00 exemption in personal property under New York C.P.L.R. § 5205(a)(9) on Schedule C, arising from cash on hand and from four bank accounts (the "Joint Funds").  *See* Appendix 1 to this Decision and Order.  Without evidence to the contrary, the Court deems the Joint Funds to be jointly owned by the Debtors.  *See In re Jacobs*, 394 B.R. 646, 675 (Bankr. E.D.N.Y. 2008) (discussing N.Y. BANKING LAW § 675(b) (McKinney 2011)); *Crane v. Crane*, 202 A.D.2d 665, 666, 609 N.Y.S.2d 632, 633 (N.Y. App. Div. 2d Dep't 1994).

On September 14, 2011, the first meeting of creditors was held in accordance with § 341, and Robert L. Pryor duly qualified as the permanent Chapter 7 trustee (the "Trustee").  The Trustee was advised by Debtors at the § 341 Meeting that the Pilot had been repossessed prepetition by Honda Financial resulting in the Surplus, and that Sueng had received and deposited the Surplus postpetition.

By letter dated October 18, 2011, the Trustee made demand that Debtors turn over the entire Surplus.

Rather than turn the Surplus over, on November 3, 2011, Debtors filed an amendment to Schedule B [dkt item 14] to include an ownership interest in the Pilot, and an amendment to Schedule C [dkt item 15] to increase their cash exemption claim to $1,774.00 under N.Y. C.P.L.R. § 5205(a)(9), and to claim an exemption in the Pilot as a "Motor Vehicle" in the sum of $4,000.00 under N.Y. C.P.L.R. 5205(a)(8) (collectively the "Amended Schedules"). *See* Appendix 2 to this Decision and Order.

---

[2]  All references to the Bankruptcy Code are to 11 U.S.C. § 101, *et seq*.

On November 22, 2011, the Trustee filed a motion seeking to compel Debtors to turn over the Surplus (the "Motion to Compel"). [dkt item 21]

On December 10, 2011, Debtors filed an objection to the Motion to Compel (the "Objection") [dkt item 25], in which Debtors acknowledged no longer owning the Honda, but argued, *inter alia*, that they are entitled to a $4,800.00 cash exemption with regard to the Surplus and accordingly are not required to turn over the Surplus.

On December 15, 2011, the Trustee filed a reply to Debtors' Objection (the "Reply") [dkt item 26], in which the Trustee argued that the Amended Schedules were improper based on both procedural and substantive infirmities, including a failure to serve the Amended Schedules in accordance with E.D.N.Y. Local Bankruptcy Rules ("LBR") 1009-1 and 4003-1, and that Debtors are not allowed to claim the cash derived from the Surplus as exempt.[3]

A hearing on the Motion to Compel was held on December 20, 2011. At the hearing, the Court directed Debtors to file and serve the Amended Schedules in accordance with E.D.N.Y. LBR 1009-1 and 4003-1 by December 27, 2011, to specifically address the exemptions they initially asserted in their Objection. The Court also set a deadline for supplemental submissions to be filed by January 10, 2012, after which the Motion to Compel would be under submission.

On December 26, 2011, Debtors filed but did not serve a second amended Schedule B [dkt item 28] and a second amended Schedule C (the "Second Amended Schedule C") [dkt item 29] (collectively the "Second Amended Schedules"). On their Second Amended Schedule C, Debtors now claim a $5,000.00 cash exemption for the Surplus under N.Y. C.P.L.R.

---

[3] E.D.N.Y. LBR 1009-1(iv) provides that "If the amendment affects claimed exemptions, the amending party must also serve all creditors." E.D.N.Y. LBR Rule 4003-1, titled Amendment To Claim Of Exemptions, provides:

> An amendment to a claim of exemptions pursuant to Bankruptcy Rules 1009 and 4003 and these rules shall be filed and served on the trustee, the United States trustee, all creditors, and other parties in interest. An amendment shall not be effective until proof of service is filed, which shall be done within 7 days of service.

§ 5205(a)(9), in addition to the $326.00 in Joint Funds, and a $4,000.00 exemption in the Pilot under N.Y. C.P.L.R. § 5205(a)(8). *See* Appendix 3 to this Decision and Order.

On January 10, 2012, the Trustee filed a supplemental reply to Debtor's Objection [dkt item 31] in which the Trustee argued, *inter alia*, that the Second Amended Schedules were also not properly filed and served.

On March 2, 2012, the Court entered an Order that directed Debtors to file and serve the Second Amended Schedules by March 9, 2012, in accordance with the Local Bankruptcy Rules for the Eastern District of New York.

On March 7, 2012, Debtors filed an affidavit in compliance with E.D.N.Y. LBR 1009-1(a). [dkt item 38]  Also on March 7, 2012, Debtors filed an affidavit of service whereby counsel affirmed under penalty of perjury that the Second Amended Schedules were served upon all parties in interest.  [dkt item 39]

## DISCUSSION

The two questions before the Court are (1) whether and to what extent may Sueng and/or Keum claim an exemption under New York law for the Surplus cash; and (2) whether Sueng and/or Keum may claim an exemption for the Pilot.

### 1. *Availability of exemptions for cash under New York law*

New York State residents who file for bankruptcy relief after January 21, 2011, have an option to select either New York state or federal exemptions; while New York had long been an "opt out" state, New York recently "opted in" and thus allows its residents to choose either the New York exemptions or the federal exemptions provided under the Bankruptcy Code. *See* 11 U.S.C. §§ 522(b), (d); N.Y. DEBT. & CRED. LAW § 285 (McKinney 2011).  In this case, Debtors elected to claim the New York State exemptions.

The first issue is whether Debtors can claim an exemption for the Surplus.  The parties agree that the applicable statutory provision is New York Debtor and Creditor Law ("DCL") § 283(2).  Under DCL § 283(2), New York permits a $5,000.00 cash exemption for a debtor who "does not elect, claim, or otherwise avail" himself or herself of the state homestead exemption under New York C.P.L.R. § 5206, "or who has not claimed the maximum [$10,000.00] exemption in the aggregate for personal property under N.Y. C.P.L.R. § 5205."[4]  N.Y. DEBT. & CRED. LAW § 283(2); *In re Howe*, 2009 WL 2914229, at *3 (Bankr. N.D.N.Y. June 26, 2009) (citing *In re Cinelli*, 2006 WL 3545444, at *3 (Bankr. N.D.N.Y. Dec. 8, 2006) and *In re Hill,* 95 B.R. 293, 298 (Bankr. N.D.N.Y. 1988)).  Exemptions are determined as of the petition date.  *See In re DeVries*, 76 B.R. 917, 918 (Bankr. N.D.N.Y. 1987) (citations omitted).

The Trustee appears to argue, in part, that Debtors cannot exempt the Surplus as "cash" by intertwining New York C.P.L.R § 5205 and DCL § 283(2); the Trustee asserts that while DCL § 283(2) places a cap on the amount of "cash" Debtors could exempt, the statute only allows this exemption to be utilized if Debtors had an annuity to exempt.  Reply at ¶ 12. [dkt item 26]  However, this argument is not correct; DCL § 283(1) and 283(2) are alternative exemptions, and DCL § 283(2) does not require Debtors to possess a right to an annuity

---

[4] Specifically, DCL § 283(2) states the following for the "Contingent alternative bankruptcy exemption":

> Notwithstanding section two hundred eighty-two of this article, a debtor, who (a) does not elect, claim, or otherwise avail himself of an exemption described in section fifty-two hundred six of the civil practice law and rules; (b) utilizes to the fullest extent permitted by law as applied to said debtor's property, the exemptions referred to in subdivision one of this section which are subject to the ten thousand dollar aggregate limit; and (c) does not reach such aggregate limit, may exempt cash in the amount by which ten thousand dollars exceeds the aggregate of his or her exemptions referred to in subdivision one of this section or in the amount of five thousand dollars, whichever amount is less. For purposes of this subdivision, cash means currency of the United States at face value, savings bonds of the United States at face value, the right to receive a refund of federal, state and local income taxes, and deposit accounts in any state or federally chartered depository institution.

N.Y. DEBT. & CRED. LAW § 283(2).

exemption in order to claim the contingent alternative bankruptcy exemption.  *See* N.Y. DEBT. & CRED. LAW §§ 282, 283.

The Trustee also argues that the exemption for "cash" in DCL § 283(2) does not include the "'right to surplus money from sale of a motor vehicle' as part of its definition.'"  Reply at ¶ 14.  On this point, the Trustee is correct.

Under DCL § 283(2), "cash means currency of the United States at face value, savings bonds of the United States at face value, the right to receive a refund of federal, state and local income taxes, and deposit accounts in any state or federally chartered depository institution." N.Y. DEBT. & CRED. LAW § 283(2).  Although exemptions are to be liberally construed in favor of the debtor, *see In re Rasmussen*, 2010 Bankr. LEXIS 2388, at *8 (Bankr. E.D.N.Y. July 20, 2010), bankruptcy courts have narrowly construed the meaning of "cash" and have strictly adhered to the categories listed in DCL § 283(2).  *See In re Quackenbush*, 339 B.R. 845, 853-855 (S.D.N.Y. 2006) ("The prevailing view is that the definition of 'cash' in DCL § 283(2) is a narrow one."); *In re Pless*, 202 B.R. 663, 667 (Bankr. N.D.N.Y 1996) (settlement proceeds on deposit in debtor's attorney's escrow account were not "cash" under DCL § 283(2) because debtor only had an equitable interest in the funds until all the conditions of the settlement were performed); *In re Hill*, 95 B.R. 293 (Bankr. N.D.N.Y. 1988) (insurance proceeds received postpetition from personal property loss claim that arose prepetition belonged to the estate and were not "cash" under DCL § 283(2)); *see also In re Lowe*, 252 B.R. 614 (Bankr. W.D.N.Y. 2000) (accrued but unpaid profit-sharing distributions were not "cash" under DCL § 283(2) because they were not cash in hand).

Here, Sueng had a prepetition vested right to receive payment of the Surplus from the sale of the Pilot, even though he was not aware of the existence of the Surplus until after the

Petition Date.  Debtors did not disclose the Surplus in their original Schedules because they were not aware that the Surplus existed.  Debtors did disclose Sueng's receipt of the Surplus after the Petition Date.  However, on the Petition Date, the Surplus did not constitute "cash" as defined in DCL § 283(2), because at that point the Surplus was, at best, a right to receive payment, evidenced by a check in transit.  While a check is a negotiable instrument that may be payable in U.S. currency[5], a check is not "currency of the United States at face value" or "savings bonds of the United States at face value."  Nor was the check that Sueng received a right to receive payment of "a refund of federal, state and local income taxes," as the check in this case represented the right to receive the surplus proceeds from the prepetition auction sale of the Pilot.

It is also clear that the Surplus cannot be characterized as a "deposit account" in a "state or federally chartered depository institution."[6]  Here, Debtors claim that Sueng received a check for the Surplus sometime after the Petition Date.  Because a check like the one Sueng received is an instrument and a debt evidenced by an instrument is excluded from the definition of a "deposit account" in U.C.C. § 9-102(a)(29), the term "deposit account" does not apply to the Surplus and, therefore, the Surplus cannot be "cash" as defined in DCL § 283(2).

Case law supports this conclusion.  In *In re DeVries*, 76 B.R. 917, 918 (Bankr. N.D.N.Y. 1987), the court held that Debtor's postpetition proceeds received on account of a prepetition automobile property insurance claim were not "cash" as defined under DCL § 283(2) because "[a]t the time of filing, the Debtors held no more than a liquidated, contingent claim against a

---

[5]  *See* N.Y. U.C.C. §§ 3-104; 9-102(a)(47) (McKinney 2011).

[6]  "Deposit account" is defined in Article 9 of New York's Uniform Commercial Code ("U.C.C.") as "a demand, time, savings, passbook, or similar account maintained with a bank. The term *does not include* investment property or accounts evidenced by *an instrument*." U.C.C. § 9-102(a)(29) (emphasis added). Under the U.C.C., an "instrument means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation", such as a check. U.C.C. § 9-102(a)(47); § 3-104(2)(b). Therefore, it appears to the Court that a check is expressly defined out of "deposit account" in the U.C.C.

third party for damages inflicted upon their exempt automobile." The court reasoned:

> As the time of filing is the benchmark for purposes of determining the exempt nature of property of the estate, then a right to receive the payments cannot constitute "cash" within the definition of [DCL § 283(2)]. The only "right to receive" recognized by the New York State Legislature as a cash exemption involves a debtor's receipt of federal, state, and local income tax returns. Had the Legislature intended the broader scope urged by the Debtors, the statute could have easily been drafted to say so.

*Id.* at 919; *see also In re Olmstead*, 82 B.R. 197 (Bankr. W.D.N.Y. 1988) (employee bonus earned prepetition but received by debtor postpetition was not "cash" under DCL § 283(2)); *In re Sykes*, 76 B.R. 924 (Bankr. N.D.N.Y. 1987) (debtor's right to payment from deceased spouse's 401(k) plan which vested prepetition but which was paid postpetition was not "cash" under DCL § 283(2)); *In re Abdo*, 65 B.R. 56 (Bankr. N.D.N.Y. 1986) (vested right to future installments due on a mortgage were not "cash" and could not be claimed as exempt); *but see In re Bartoszewski*, 36 B.R. 424, 425 (Bankr. N.D.N.Y. 1984) (prepetition vested future right to payment of monetary inheritance was "cash" although not received until three months postpetition, taking into account the legislative purpose of giving debtors a "fresh start.")[7]; *cf. Barnhill v. Johnson*, 426 U.S. 393, 401 (transfer of funds related to a check occurred when the drawee bank honored the check, not when the check was issued); *In re Brubaker*, 426 B.R. 902, 903 (Bankr. M.D. Fla. 2010) (funds related to checks that the debtor signed prepetition but which were honored postpetition were property of the estate under 11 U.S.C. § 541(a)(1)).

Similar to the debtor in *DeVries*, Sueng did not have cash in hand nor did he have the cash in a deposit account in a chartered depository institution as of the Petition Date. At the time of filing, Sueng held no more than a "right to receive" payment for the Surplus arising from the sale of the Pilot. *DeVries*, 76 B.R. at 919. The overwhelming majority of courts that have

---

[7] However, *Bartoszewski* was subsequently limited to its facts and has not been followed by other courts. *In re McNeill*, 193 B.R. 654, 661 (Bankr. E.D.N.Y. 1996); *Devries* 76 B.R. 917, 919; *In re Abdo*, 65 B.R. 56.

considered the issue have concluded that a right to receive payment, even if vested as of the petition date, is not "cash" under DCL § 283(2). Thus, under the *expressio unius est exclusio alterius*[8] principle of statutory construction, Sueng's prepetition vested right to receive payment stemming from a prepetition auction sale is not "cash" as contemplated by the statute. *Id.* The Court, therefore, concludes that Debtors may not use DCL § 283(2) to exempt the Surplus.

However, Debtors are entitled to use the standard exemption for personal property or cash under the New York exemption statutes available in New York C.P.L.R. § 5205 for a debtor who does not use the homestead exemption, as Debtors did not claim a homestead exemption. Under New York C.P.L.R. § 5205(a)(9) "if no homestead exemption is claimed, then one thousand dollars in personal property, bank account or cash" is exempt from the satisfaction of a money judgment; each debtor would be entitled to claim this exemption from available property up to $1,000.00 each. However, since the Pilot was titled in Sueng's name alone, only he would be entitled to exempt as personal property the right to receive the Surplus, up to the $1,000.00 limit, as this right to the Surplus is personal property under New York C.P.L.R. § 5205(a)(9).[9]  It also appears to the Court that, construing the claimed exemptions liberally in favor of the Debtors, Sueng can exempt his one-half ownership interest in the Joint Funds under DCL § 283(2), because the Joint Funds are comprised of $100.00 in cash on hand and $226.00 held in accounts at four banks that appear to be insured depository institutions. Therefore, in contrast to the Surplus, the Joint Funds appear to satisfy the definition of "cash" in DCL § 283(2). Accordingly, Sueng may claim $1,000.00 of the Surplus as exempt under C.P.L.R. § 5205(a)(9),

---

[8] "The maxim *expressio unius est exclusio alterius* is applied in the construction of the statutes, so that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded." N.Y. Stat. § 240 (McKinney 2011).

[9] "Personal property" broadly includes "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." BLACK'S LAW DICTIONARY (9th ed. 2009).

and he may exempt $163.00 representing his one-half interest in the Joint Funds under DCL

§ 283(2).  Sueng must, therefore, turn over the $3,851.47 balance of the Surplus to the Trustee.

Keum, on the other hand, may only exempt her one-half ownership interest in the Joint

Funds, or $163.00.  There is no evidence before the Court that the Pilot was jointly owned by

both Debtors[10]; thus, Keum cannot claim a personal property exemption in the Surplus under

C.P.L.R. § 5205(a)(9) for personal property she did not own.  Therefore, Keum may exempt

$163.00 under New York C.P.L.R § 5205(a)(9).

*2.  Debtors may not claim an exemption in the Pilot*

The Trustee also argued that Debtors could not claim an ownership interest in the Pilot on

their Second Amended Schedules because Honda Financial conducted a prepetition private

repossession sale of the Pilot and, as a result, Debtors ability to exercise the right of redemption

under New York Personal Property Law § 302 and New York General Obligations Law § 7-401

to reclaim the Pilot was extinguished.  This Court agrees and holds that Sueng was no longer the

holder of legal title with respect to the Pilot as of the Petition Date.  *See* U.C.C. § 9-601, *et seq.*

Accordingly, Debtors' claim of an exemption in the Pilot is denied.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Trustee's Motion is granted in part as set forth herein; and it is further

**ORDERED**, that Co-Debtor Sueng shall have until **May 25, 2012**, to turn over the

$3,851.47 balance of the Surplus to the Trustee; and it is further

---

[10]  *See* the August 24, 2011 Report of Sale from Honda Financial. Motion to Compel [dkt item 26, Ex. A] (addressed solely to Sueng).

**ORDERED**, that all other relief sought by the parties in connection with the Motion to Compel and the Objection is denied.



Dated: April 24, 2012
     Central Islip, New York

                              **Alan S. Trust**
                **United States Bankruptcy Judge**

**APPENDIX 1**

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

| Description of Property | Specify Law Providing Exemption | Value of Claimed Exemption |
|---|---|---|
| Cash on Hand | | |
| Cash on Hand | NY CPLR § 5205(a)(9) | 100.00 |
| | | |
| Checking, Savings, or Other Financial Accounts, Certificates of Deposit | | |
| Chase Bank ending in 2706 | NY CPLR § 5205(a)(9) | 158.00 |
| Shinhan Bank ending in 3960 | NY CPLR § 5205(a)(9) | 11.00 |
| Woori Bank ending in 7511 | NY CPLR § 5205(a)(9) | 28.00 |
| Nara Bank ending in 9201 | NY CPLR § 5205(a)(9) | 29.00 |
| Household Goods and Furnishings | | |
| Furnitures $1,000 | NY CPLR § 5205(a)(5) | 1,600.00 |
| TV $300 | | |
| Computer $300 | | |
| Wearing Apparel | | |
| At Home | NY CPLR § 5205(a)(5) | 500.00 |
| Automobile, Trucks, Trailers, and Other Vehicles | | |
| 2001 Nissan Altima GXE | NY CPLR § 5205(a)(8) | 2,780.00 |

**APPENDIX 2**

## AMENDED SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

| Description of Property | Specify Law Providing Exemption | Value of Claimed Exemption |
|---|---|---|
| Cash on Hand | | |
| Cash on Hand | NY CPLR § 5205(a)(9) | 1,774.00 |
| | | |
| Checking, Savings, or Other Financial Accounts, Certificates of Deposit | | |
| Chase Bank ending in 2706 | NY CPLR § 5205(a)(9) | 158.00 |
| Shinhan Bank ending in 3960 | NY CPLR § 5205(a)(9) | 11.00 |
| Woori Bank ending in 7511 | NY CPLR § 5205(a)(9) | 28.00 |
| Nara Bank ending in 9201 | NY CPLR § 5205(a)(9) | 29.00 |
| Household Goods and Furnishings | | |
| Furnitures $1,000 | NY CPLR § 5205(a)(5) | 1,600.00 |
| TV $300 | | |
| Computer $300 | | |
| Wearing Apparel | | |
| At Home | NY CPLR § 5205(a)(5) | 500.00 |
| Automobile, Trucks, Trailers, and Other Vehicles | | |
| 2001 Nissan Altima GXE | NY CPLR § 5205(a)(8) | 2,780.00 |
| Honda Pilot 2007 | NY CPLR § 5205(a)(8) | 4,000.00 |

**APPENDIX 3**

# SECOND AMENDED SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

| Description of Property | Specify Law Providing Exemption | Value of Claimed Exemption |
|---|---|---|
| Cash on Hand | | |
| Cash on Hand | NY CPLR § 5205(a)(9) | 5,000.00 |
| | | |
| Checking, Savings, or Other Financial Accounts, Certificates of Deposit | | |
| Chase Bank ending in 2706 | NY CPLR § 5205(a)(9) | 158.00 |
| Shinhan Bank ending in 3960 | NY CPLR § 5205(a)(9) | 11.00 |
| Woori Bank ending in 7511 | NY CPLR § 5205(a)(9) | 28.00 |
| Nara Bank ending in 9201 | NY CPLR § 5205(a)(9) | 29.00 |
| Household Goods and Furnishings | | |
| Furnitures $1,000 | NY CPLR § 5205(a)(5) | 1,600.00 |
| TV $300 | | |
| Computer $300 | | |
| Wearing Apparel | | |
| At Home | NY CPLR § 5205(a)(5) | 500.00 |
| Automobile, Trucks, Trailers, and Other Vehicles | | |
| 2001 Nissan Altima GXE | NY CPLR § 5205(a)(8) | 2,780.00 |
| Honda Pilot 2007 | NY CPLR § 5205(a)(8) | 4,000.00 |